# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRITTANY MOORE;                 )<br>                                 )<br>    Plaintiff                  )<br>                                 )<br>  v.                             )<br>                                 )<br>MW SERVICING, LLC;               )<br>WBH SERVICING, LLC; and          )<br>JOSHUA BRUNO;                    )<br>                                 )<br>    Defendants                  ) | Civil Action No. _____<br><br>COMPLAINT AND<br>JURY TRIAL DEMAND<br><br><br>COLLECTIVE ACTION |

Plaintiff Brittany Moore, through undersigned counsel, hereby alleges as follows:

## THE PARTIES

1. Brittany Moore is an individual of the full age of majority and a resident of Jefferson Parish, Louisiana.

2. Defendant MW Servicing, LLC, is a Louisiana limited liability company with its domicile address at 147 Carondelet Street, Suite 1137, New Orleans Louisiana.

3. Defendant WBH Servicing, LLC, is a Louisiana limited liability company with its domicile address at 147 Carondelet Street, Suite 1137, New Orleans, Louisiana.

4. Both corporate defendants operate under the trade name "Metrowide Apartments."

5. Defendant Joshua Bruno is the sole owner and member of both corporate defendants, and manages and supervises both entities. Bruno exercises operational control over the corporate defendants, including over their pay policies and practices.

6. Bruno resides within the Eastern District of Louisiana.

## JURISDICTION AND VENUE

7. This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), because they arise from the same set of operative facts as Plaintiff's federal law claims.

9. Defendants reside within this District, and a substantial part of the events or omissions giving rise to this claim occurred within this District. Venue is therefore proper in this Court. 28 U.S.C. § 1391.

10. Defendants are engaged in commerce pursuant to 29 U.S.C. § 203(s).

11. Defendants' annual gross volume of sales made or business done has exceeded $500,000 for each year during the relevant time period.

12. Defendants have a common business purpose and exercise unified operation and common control. They therefore qualify as an enterprise pursuant to 29 U.S.C. § 203(r).

13. Defendant Bruno is the sole owner and managing member of the corporate defendants. He acts, or has the power to act, on behalf of the companies.

14. Bruno sets company-wide pay practices and policies, including the policies complained of herein.

15. Plaintiff hereby requests a trial by jury.

## FACTUAL ALLEGATIONS

16. Plaintiff applied to work for Defendants in November 2019. On November 18, 2019, Defendants presented Plaintiff with an offer letter for a position as the Assistant Property Manager of the Oakmont Apartments, an apartment complex in Algiers, Louisiana with approximately 340 units.

17.   The offer letter was signed by Bruno as "CEO/President" of WBH Servicing, LLC.  Plaintiff's annual salary was set at $40,000.00, which was to "be paid bi-weekly on Fridays."

18.   When Plaintiff was hired, the Oakmont property was severely understaffed.  For instance, although Plaintiff was hired as Assistant Property Manager, there was no Property Manager at the time.  As a result, when Plaintiff started working she was effectively responsible for managing the Oakmont property on her own.

19.   Defendants' pay period ends on a Wednesday, and payday is the following Friday.

20.   Plaintiff signed up for direct deposit, meaning her paychecks were supposed to be automatically electronically deposited into her bank account.

21.   It is unclear which of Defendants' entities was responsible for Plaintiff's payroll.  Plaintiff received one payment via direct deposit, which came from an account held by WBH Servicing LLC.  However, she also received another payment by paper check, which was written on an account held by MW Servicing, LLC.  On information and belief, the business activities of these companies are intermingled and they act as essentially the same enterprise; that is, Metrowide Apartments.

22.   Crime and drug use are prevalent at the Oakmont complex.  Defendants failed to provide adequate lighting and safety measures, and Plaintiff began to feel unsafe, especially after dark.  On December 12, 2019, Plaintiff received an angry phone call from a man who identified himself as an ex-resident of Oakmont.  Defendants' main office called Plaintiff and warned her that this man was a threat, and that she should take precautions.

23.   Plaintiff felt unsafe and resigned her employment on December 12, 2019.  She wrote a resignation letter and left it, along with her timesheet, in the office at the Oakmont

Complex.

24. At the time of her resignation, Plaintiff was owed for one week and one days' pay.

25. The next regularly scheduled payday after Plaintiff's resignation was December 20, 2019.

26. Plaintiff did not receive a direct deposit on December 20, 2019.

27. Plaintiff has made numerous attempts to contact Defendants to obtain her money. All were rebuffed.

28. On December 20, 2019, Plaintiff sent a text message to Bruno stating: "Hey josh, where is my check? Do I need to come down there because I will." Bruno did not respond.

29. Plaintiff sent similar text messages to Bruno on December 23, 2019, and January 3, 2020. Bruno did not respond to any of these messages.

30. Plaintiff also sent repeated text messages to Steve Coffman, Defendants' vice president, asking about her check. On December 23, 2019, Coffman responded that the paycheck would be mailed to Moore at her home address. On December 30, 2019, Moore asked again, and Coffman said it would be mailed out "this pay period." On January 3, 2020, Moore texted Coffman again, and Coffman did not respond.

31. Plaintiff has also tried calling Defendants' main office, but Defendants refuse to take her calls.

32. To date, Plaintiff has still not received her final paycheck.

## COLLECTIVE ACTION ALLEGATIONS

33. Refusing to pay a worker's final paycheck is a standard *modus operandi* for Defendants, along with the other companies owned by Joshua Bruno. When an employee quits or is fired, Bruno's companies refuse to pay the final paycheck, as a matter of corporate

policy and practice.

34. Plaintiff brings this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former similarly situated employees who worked for Metrowide Apartments or any other entity owned by Joshua Bruno within three years prior to the date of filing this lawsuit, and who were not timely paid their final paychecks as required by law.

35. Because Defendants pay these employees $0.00 for their last pay period they have, by definition, failed to pay the minimum wage of at least $7.25 per hour. This is a facial violation of the FLSA.

36. Defendants operate with a purposeful common practice, policy, or plan to deny their employees their lawfully earned wages.

37. Plaintiff is similarly situated to the remaining members of the collective.

38. Plaintiff requests that, at the soonest practicable time, the Court order that notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

## FIRST CAUSE OF ACTION

## FAILURE TO PAY MINIMUM WAGE (29 U.S.C. § 206)

39. Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

40. The FLSA requires that employers pay employees at least $7.25 per hour for all hours worked, up to forty hours in a workweek. 29 U.S.C. § 206(a).

41. Defendants have never paid Plaintiff for the work performed during her final pay period.

42. As a result, Defendants have paid below minimum wage for the hours worked during that pay period.

43. Defendants have never paid the remaining members of the collective for the work performed during their final pay periods.

44. Defendants operate with a purposeful and intentional practice of refusing to pay final wages to former employees.

45. Defendants' nonpayment was and is willful and not based in a good faith belief that their conduct was in accordance with the law.

## SECOND CAUSE OF ACTION

## LOUISIANA WAGE PAYMENT ACT (La. Rev. Stat. §§ 23:631-632)

46. Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

47. Defendants failed to pay Plaintiff and the members of the collective all sums owed to them on or before the next regular payday or no later than fifteen days following the date of discharge.

48. Plaintiff and the members of the collective have repeatedly demanded payment of their wages from Defendants, but have still not received the money owed to them.

49. Defendants' actions violate the Louisiana Wage Payment Act.  Plaintiff and the members of the collective are entitled to full payment of unearned wages, plus penalty wages according to statute, and recovery of reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

    a. That this case be allowed to proceed as a collective action;

    b. For an award of all unpaid wages and overtime according to proof;

    c. For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

    d. For an award of reasonable attorney's fees and costs of suit;

    e. For damages and penalties under the Louisiana Wage Payment Act;

  f.  For injunctive or equitable relief as provided by law;

  g.  For pre and post-judgment interest to the extent provided by law; and

  h.  For such other and further relief as may be just and proper.

          Respectfully Submitted,

          /s/ Charles J. Stiegler
          Charles J. Stiegler, #33456 (TA)
          STIEGLER LAW FIRM LLC
          318 Harrison Ave., Suite #104
          New Orleans, La. 70124
          (504) 267-0777 (telephone)
          (504) 513-3084 (fax)
          Charles@StieglerLawFirm.com