## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRITTANY MOORE, et al.** | * | **CIVIL ACTION NO. 20-cv-0217** |
| *Plaintiffs*, | * | **SECTION: (T)(5)** |
| **vs.** | * | |
| **MW SERVICING, LLC, WBH** | * | |
| **SERVICING, LLC, JOSHUA BRUNO,** | | |
| **AND BRUNO, INC.** | * | **JURY TRIAL DEMANDED** |
| *Defendants.* | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| **\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** | * | |

## FIRST AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Brittany Moore,  a person of the full age of majority domiciled in Eastern District of Louisiana, on her own behalf and on behalf of those similarly situated (at times hereinafter referred to collectively as "Plaintiffs"), who files this *First Amended Complaint*, pursuant to Fed. R. Civ. P. 15(a)(1)(B) and alleges as follows:

### I.    PARTIES

1.    Plaintiff, Brittany Moore, is an individual of the full age of majority and a resident of Jefferson Parish, Louisiana, and a former employee of Defendants.

2.      Plaintiff, Christopher Willridge, is an individual of the full age of majority and a resident of Orleans Parish, Louisiana, and a former employee of Defendants.

3.      Plaintiff, Jada Eugene, is an individual of the full age of majority and a resident of Orleans Parish, Louisiana, and a former employee of Defendants.

4.      Plaintiff, Dmitry Feller, is an individual of the full age of majority and a resident of Orleans Parish, Louisiana, and a former employee of Defendants.

5.      Made Defendant herein, MW Servicing, LLC, is a Louisiana limited liability company with its domicile address at 147 Carondelet Street, Suite 1137, New Orleans Louisiana.

6.      Made Defendant herein, WBH Servicing, LLC, is a Louisiana limited liability company with its domicile address at 147 Carondelet Street, Suite 1137, New Orleans, Louisiana.

7.      Made Defendant herein, Bruno, Inc. (hereinafter "Bruno, Inc."), a corporation organized in the state of Nevada, who has a registered office at 1039 3rd St., Kenner, LA 70062, naming the registered agent and officer as Defendant Joshua Bruno, is doing business in Orleans Parish, Louisiana with a principal place of business at 3929 Tulane Ave., Suite 200, New Orleans, LA 70119, and can be served through their Registered Office and Registered Agent, Joshua Bruno, at 147 Carondelet St., Suite 1137, New Orleans, LA 70130.

8.      Made Defendant herein, Joshua Bruno (hereinafter "Bruno" or "Defendant Bruno"), resides in the Eastern District of New Orleans, is the sole owner and member of all corporate defendants, and manages and supervises all Defendant entities. Bruno exercises operational control over the corporate defendants, including over their pay policies and practices.

9.      Whenever in this complaint it is alleged that the corporate Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents,

servants, or employees committed such act or omission, and that at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## II.    JURISDICTION AND VENUE

10.    This action alleges the violation of rights under the Fair Labor Standards Act (hereafter "FLSA").  Thus, the predominant action herein gives rise to the jurisdiction in this Court pursuant to 28 U.S.C. §1331. Furthermore, there exist additional state causes of action that arise out of the same transaction or occurrence as the underlying federal cause of action, and this Court has ancillary jurisdiction over these counts pursuant to 28 U.S.C. §1367.

11.    The Court has personal jurisdiction over Defendants since they regularly conduct business in the Eastern District of Louisiana, and therefore have minimum contacts with the State of Louisiana. Alternatively, the events or omissions giving rise to the instant lawsuit all occurred within Louisiana. Venue lies in this Court over these claims pursuant to 28 U.S.C. § 1391(b)(l) and (b)(2).

12.    Defendants are engaged in commerce pursuant to 29 U.S.C. § 203(s).

13.    Defendants' annual gross volume of sales made or business done has exceeded $500,000 for each year during the relevant time period.

14.    Defendants have a common business purpose and exercise unified operation and common control. They therefore qualify as an enterprise pursuant to 29 U.S.C. § 203(r).

15.    Defendant Bruno is the sole owner and managing member of the corporate defendants. He acts, or has the power to act, on behalf of the companies.

16.     Bruno sets company-wide pay practices and policies, including the policies complained of herein.

17.     Plaintiffs hereby request a trial by jury.

### III.    FACTUAL BACKGROUND

**a.  Plaintiff Christopher Willridge**

18.     Plaintiff Willridge applied to work for Defendants in April of 2019. On April 9, 2019, Defendants presented Plaintiff Willridge with an offer letter, which was accepted, for a position as the Area Property Manager.

19.     As part of Plaintiff Willridge's compensation package with Defendants, he was promised bonuses.

20.     As of the date of Plaintiff Willridge's termination, Defendants have yet to pay any non-discretionary bonuses that have been earned.

21.     Plaintiff Willridge's salary was based on a forty hour per week work-week.

22.     Plaintiff Willridge was a full time, non-exempt employee of Defendants.

23.     Plaintiff Willridge's regular job duties required Plaintiff Willridge to routinely work over 40 hours per week throughout his employment with Defendants.

24.     As a non-exempt employee, Plaintiff Willridge was entitled to overtime pay.

25.     Plaintiff Willridge was not correctly compensated for hours he routinely worked in excess of forty (40).  Plaintiff knows of others similarly situated to him.

26.     Plaintiff Willridge's employment was terminated on June 26, 2019.  Defendants have also failed and/or refused to pay Plaintiff Willridge undisputable owed wages for his last bi-weekly pay period worked.

27.     Furthermore, Defendants have refused to tender even minimum wage amounts for the last two week period wherein Plaintiff Willridge worked.

28.     In the weeks prior to terminating his employment with Defendants, Plaintiff Willridge began noticing a pattern and practice employed by Defendant Bruno of threatening employees who challenged his pay practices, and refusing to pay them for entire pay periods they were owed for in the pay period prior to termination.  Of course, Plaintiff Willridge suffered those same labor violations as described herein.

29.     Plaintiff worked for, and took direction from, Defendant Bruno on behalf of dozens of Louisiana corporations and limited liability companies, including the named Defendant entities, owned by Defendant Bruno, in furtherance of Defendant Bruno's business interests.

30.     Defendant Bruno is an alter-ego of Bruno, Inc., WBH Servicing, LLC, and MW Servicing, LLC as he controls these entities, their finances, their employees, and all assets and liabilities through himself and/or commingled through dozens of other related entities yet to be discovered, all controlled by Defendant Bruno.

31.     Upon information and belief, none of Defendant Bruno's entities follow any requisite legal formalities.

32.     Plaintiff Willridge resigned on June 26, 2019.

33.     On July 16, 2019, after several verbal requests were denied, Plaintiff Willridge demanded payment of his unpaid wages in writing.

34.     Steve Kauffman, CFO, Joshua Bruno, Owner, Dmitry Feller, Human Resources Manager, and Inga Feria, Purchasing Manager all received Plaintiff Willridge's written demand

for wages, but did not to respond per Defendant Bruno's instruction.  These individuals all work or worked at named Defendant entities.

35.     To date, Defendants have refused to relinquish any of Mr. Willridge's owed wages or provide any reference to any legal authority that absolves the Defendants of paying these earned wages.

36.     Defendants' continued refusal to pay undisputed final earned wages, with no explanation or response in light of the several requests, further evidences Defendants' willful violations of the FLSA and LWPA unreasonable under any circumstances and not in good faith.

**b.  Plaintiff Dmitry Feller**

37.     Plaintiff Feller began to work for Defendants on about August 10, 2018 in a position called Accounting Manager.

38.     Plaintiff Feller's duties were directed by Defendant Bruno and involved his knowledge and labor in handling Defendants' bank statements, bank transfers between Defendant Bruno personally and the Defendant corporate entities, and payroll directives, among other things.

39.     Defendant Bruno instructed Plaintiff Feller, and other alleged salaried employees, to write down certain hours worked and turn it in to Defendant Bruno to see how hard employees were working.

40.     Defendant Bruno directed Plaintiff Feller to decrease pay for any salaried employee who does not show a full eighty hours per week on their bi-weekly time reports, regardless if Defendants alleged that the employee was salaried and/or exempt.

41.     As a common policy and practice, Defendants reduce salaried employees' wages, including those employees they allege are exempt, and calculate that reduction based on hours under eighty in a bi-weekly pay period.

42.     Notably, Plaintiff Feller was directed that no putative class members' wages were ever to increase for hours worked over forty (40) hours per week, but only to reduce salary pay for any employee not meeting Defendants' requirements in the pay period, including himself. Plaintiff Feller knows of other employees of Defendants who were subjected to this scheme.

43.     Plaintiff Feller's salary was based on a forty hour per week work-week.

44.     Plaintiff Feller was a full time, non-exempt employee of Defendants.

45.     Plaintiff Feller's regular job duties required Plaintiff Feller to routinely work over 40 hours per week throughout his employment with Defendants.

46.     As a non-exempt employee, Plaintiff Feller was entitled to overtime pay.

47.     Plaintiff Feller was not correctly compensated for hours he routinely worked in excess of forty (40).

48.     Plaintiff Feller's employment was terminated on July 2, 2019.  Defendants have also failed and/or refused to pay Plaintiff Feller undisputable owed wages for his last bi-weekly pay period worked.   To date, despite numerous demands, Defendants still refuse to pay indisputable earned and owed wages.

49.     Furthermore, Defendants have refused to tender even minimum wage amounts for the last two week period wherein Plaintiff Feller worked.

50.     During his employment with Defendants, Plaintiff Feller noticed a pattern and practice employed by Defendant Bruno of threatening employees who challenged his pay

practices, and refusing to pay them for entire pay periods they were owed for in the pay period prior to termination.  Plaintiff Feller suffered those same labor violations as described herein.

51.     Plaintiff worked for, and took direction from, Defendant Bruno on behalf of dozens of Louisiana corporations and limited liability companies, including the named Defendant entities, owned by Defendant Bruno, in furtherance of Defendant Bruno's business interests.

52.     Plaintiff Feller understands that Defendant Bruno is an alter-ego of Bruno, Inc., WBH Servicing, LLC, and MW Servicing, LLC as he controls these entities, their finances, their employees, and all assets and liabilities through himself and/or commingled through dozens of other related entities yet to be discovered, all controlled by Defendant Bruno.

53.     None of Defendant Bruno's entities follow any requisite legal formalities.

54.     Plaintiff Feller resigned on July 2, 2019.

55.     After not receiving his pay from the last two weeks of work, Plaintiff Feller demanded payment of his unpaid wages in writing in a message to his replacement, Inga Feria.

56.     In response to this demand sent to Ms. Feria, Defendant Bruno responded directly to Plaintiff Feller only to say to never contact another employee of Defendant Bruno ever again. Notably, Defendant Bruno did not agree to pay Plaintiff Feller's earned wages as demanded.

57.     Defendants' continued refusal to pay undisputed final earned wages, with no explanation or response in light of the several requests, further evidences Defendants' knowing and willful violations of the FLSA and LWPA unreasonable under any circumstances and not in good faith.

**c.  Plaintiff Jada Eugene**

58.     Plaintiff Eugene began working for Defendants around June 13, 2019 in a position called Leasing Consultant.

59.     As part of Plaintiff Eugene's compensation package with Defendants, she was promised commissions and bonuses.

60.     Plaintiff Eugene would essentially put customer/tenant information into a computer program and handle logistics of leasing apartments to new tenants.

61.     As of the date of Plaintiff Eugene's termination, Defendants had yet to pay any commissions or non-discretionary bonuses that have been earned.

62.     Plaintiff Eugene's salary was based on a forty hour per week work-week.

63.     Plaintiff Eugene was a full time, non-exempt employee of Defendants.

64.     Plaintiff Eugene's regular job duties required Plaintiff Eugene to routinely work over 40 hours per week throughout her employment with Defendants.

65.     As a non-exempt employee, Plaintiff Eugene was entitled to overtime pay.

66.     Plaintiff Eugene was not correctly compensated for hours she routinely worked in excess of forty (40).  Plaintiff knows of others similarly situated to her.

67.     Plaintiff Eugene's employment was terminated on July 5, 2019.  Defendants have also failed and/or refused to pay Plaintiff Eugene undisputable owed wages for her last bi-weekly pay period worked.

68.     Furthermore, Defendants have refused to tender even minimum wage amounts for the last two week period wherein Plaintiff Eugene worked.

69.     Plaintiff Eugene worked for, and took direction from, Defendant Bruno on behalf of dozens of Louisiana corporations and limited liability companies, including the named

Defendant entities, owned by Defendant Bruno, in furtherance of Defendant Bruno's business interests.

70.     On August 24, 2019, after several verbal requests were denied, Plaintiff Eugene demanded payment of her unpaid wages in writing directly to Defendant Bruno and Defendant entities.

71.     To date, Defendants have refused to relinquish any of Plaintiff Eugene's owed wages or provide any reference to any legal authority that absolves the Defendants of paying these earned wages.

72.     Defendants' continued refusal to pay undisputed final earned wages, with no explanation or response in light of the several requests, further evidences Defendants' willful violations of the FLSA and LWPA unreasonable under any circumstances and not in good faith.

### d. Plaintiff Brittany Moore

73.     Plaintiff Moore applied to work for Defendants in November 2019. On November 18, 2019, Defendants presented Plaintiff with an offer letter for a position as the Assistant Property Manager of the Oakmont Apartments, an apartment complex in Algiers, Louisiana with approximately 340 units.

74.     The offer letter was signed by Bruno as "CEO/President" of WBH Servicing, LLC. Plaintiff's annual salary was set at $40,000.00, which was to "be paid bi-weekly on Fridays."

75.     When Plaintiff Moore was hired, the Oakmont property was severely understaffed. For instance, although Plaintiff Moore was hired as Assistant Property Manager, there was no Property Manager at the time. As a result, when Plaintiff Moore started working she was effectively responsible for managing the Oakmont property on her own.

76. Defendants' pay period ends on a Wednesday, and payday is the following Friday.

77. Plaintiff Moore signed up for direct deposit, meaning her paychecks were supposed to be automatically electronically deposited into her bank account.

78. It is unclear which of Defendants' entities was responsible for Plaintiffs' payroll. Plaintiff Moore received one payment via direct deposit, which came from an account held by WBH Servicing LLC. However, she also received another payment by paper check, which was written on an account held by MW Servicing, LLC. On information and belief, the business activities of all Defendant companies are intermingled at the direction of Defendant Bruno and they act as essentially the same enterprise; that is, Metrowide Apartments.

79. Crime and drug use are prevalent at the Oakmont complex. Defendants failed to provide adequate lighting and safety measures, and Plaintiff Moore began to feel unsafe, especially after dark. On December 12, 2019, Plaintiff Moore received an angry phone call from a man who identified himself as an ex-resident of Oakmont. Defendants' main office called Plaintiff Moore and warned her that this man was a threat, and that she should take precautions.

80. Plaintiff Moore felt unsafe and resigned her employment on December 12, 2019. She wrote a resignation letter and left it, along with her timesheet, in the office at the Oakmont Complex.

81. At the time of her resignation, Plaintiff Moore was owed for one week and one days' pay.

82. The next regularly scheduled payday after Plaintiff Moore's resignation was December 20, 2019.

83. Plaintiff Moore did not receive a direct deposit on December 20, 2019.

84.     Plaintiff Moore has made numerous attempts to contact Defendants to obtain her money. All were rebuffed.

85.     On December 20, 2019, Plaintiff Moore sent a text message to Bruno stating: "Hey josh, where is my check? Do I need to come down there because I will." Bruno did not respond.

86.     Plaintiff Moore sent similar text messages to Bruno on December 23, 2019, and January 3, 2020. Bruno did not respond to any of these messages.

87.     Plaintiff Moore also sent repeated text messages to Steve Coffman, Defendants' vice president, asking about her check. On December 23, 2019, Coffman responded that the paycheck would be mailed to Moore at her home address. On December 30, 2019, Moore asked again, and Coffman said it would be mailed out "this pay period." On January 3, 2020, Moore texted Coffman again, and Coffman did not respond.

88.     Plaintiff Moore has also tried calling Defendants' main office, but Defendants refuse to take her calls.

89.     To date, Plaintiff Moore has still not received her final paycheck.

## COLLECTIVE ACTION ALLEGATIONS

90.     Plaintiffs hereby reallege and reincorporate all paragraphs set forth above.

91.     Refusing to pay a worker's final paycheck is a standard *modus operandi* for Defendants, along with the other companies owned by Joshua Bruno. When an employee quits or is fired, Bruno's companies refuse to pay the final paycheck, as a matter of corporate policy and practice.

92.     Plaintiffs bring this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former similarly situated employees who worked for

Metrowide Apartments or any other entity owned by Joshua Bruno within three years prior to the date of filing this lawsuit, and who were not timely paid their final paychecks as required by law.

93.     Because Defendants pay these employees $0.00 for their last pay period they have, by definition, failed to pay the minimum wage of at least $7.25 per hour. This is a facial violation of the FLSA.

94.     Defendants operate with a purposeful common practice, policy, or plan to deny their employees their lawfully earned wages.

95.     Plaintiffs are similarly situated to the remaining members of the collective.

96.     Plaintiffs request that, at the soonest practicable time, the Court order that notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

## FIRST CAUSE OF ACTION
## FAILURE TO PAY MINIMUM WAGE (29 U.S.C. § 206)

97.     Plaintiffs hereby reallege and reincorporate all paragraphs set forth above.

98.     The FLSA requires that employers pay employees at least $7.25 per hour for all hours worked, up to forty hours in a workweek. 29 U.S.C. § 206(a).

99.     Defendants have never paid Plaintiffs for the work performed during their final pay periods.

100.    As a result, Defendants have paid below minimum wage for the hours worked during that pay period.

101.    Defendants have never paid the remaining members of the collective for the work performed during their final pay periods.

102.    Defendants operate with a purposeful and intentional practice of refusing to pay final wages to former employees.

13

103.    Defendants' nonpayment was and is knowing, willful, reckless, and not based in a good faith belief that their conduct was in accordance with the law.

## SECOND CAUSE OF ACTION
## LOUISIANA WAGE PAYMENT ACT (La. Rev. Stat. §§ 23:631-632)

104.    Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

105.    Defendants failed to pay Plaintiff and the members of the collective all sums owed to them on or before the next regular payday or no later than fifteen days following the date of discharge.

106.    Plaintiff and the members of the collective have repeatedly demanded payment of their wages from Defendants, but have still not received the money owed to them.

107.    Defendants' actions violate the Louisiana Wage Payment Act. Plaintiff and the members of the collective are entitled to full payment of unearned wages, plus penalty wages according to statute, and recovery of reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## CONVERSION AND MISAPPROPRIATION

108.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

109.    Defendants' actions in withholding monies from Plaintiffs and the members of the collective amounts to Defendants' conversion of funds under Louisiana law.  See La. Civ. Code art. 2315.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

110.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

14

111.   As a direct and proximate result of the acts alleged herein, Defendants wrongfully deprived Plaintiffs and the members of the collective of substantial assets and were unjustly enriched by their direct receipt and retention of monies earned by the employees, and which were intended to be paid towards their earned wages.

112.   As a result of the actions of Defendants, Plaintiff and the members of the collective have suffered the following damages, and/or are entitled to the following relief:

     a.   Lost back wages;

     b.   Lost future wages;

     c.   Damages for emotional distress;

     d.   Damages for humiliation and embarrassment;

     e.   Punitive damages;

     f.   Attorneys' fees, and;

     g.   Other damages that will be shown at any trial or hearing of this matter.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

     a.   That this case be allowed to proceed as a collective action;

     b.   For an award of all unpaid wages, commissions, bonuses, and overtime;

     c.   For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

     d.   For an award of reasonable attorney's fees and costs of suit;

     e.   For damages and penalties under the Louisiana Wage Payment Act;

     f.   All compensatory and punitive damages as called for in the FLSA;

     g.   For injunctive or equitable relief as provided by law;

     h.   For pre and post-judgment interest to the extent provided by law; and

     i.   For such other and further relief as may be just and proper.

Respectfully Submitted:

_____*/s Charles J. Stiegler*_____
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite #104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

&

**Kenneth C. Bordes (Bar #35668)**
KENNETH C. BORDES,
ATTORNEY AT LAW, LLC
2725 LAPEYROUSE ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: KCB@KENNETHBORDES.COM