UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRITTANY MOORE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-217** |
| **MW SERVICING, LLC, ET AL.** | **SECTION: T(5)** |

## ORDER

Before the Court is a *Motion to Decertify Collective Action* filed by Defendants MW Servicing, LLC, WBH Servicing, LLC, Bruno, Inc., and Joshua Bruno ("Defendants").[1] Brittany Moore, Dmitry Feller, Jada Eugene, Christopher Willridge, and the five opt-in Plaintiffs ("Plaintiffs") have filed an opposition.[2] Defendants filed a reply.[3] For the reasons set forth below, the Court will grant the *Motion to Decertify Collective Action*.

This matter arises from allegations of unpaid wages in violation of the Fair Labor Standards Act ("FLSA")[4] and the Louisiana Wage Payment Act ("LWPA").[5] In November 2019, Plaintiff Moore began working as an Assistant Property Manager of the Oakmont Apartments, a multi-unit complex owned and operated by Defendants. Plaintiff Moore resigned a month later citing understaffing and unsafe conditions at the complex. Plaintiff Moore claims she never received her final paycheck despite repeated procurement efforts. This suit followed, with three additional plaintiffs joining shortly thereafter alleging, *inter alia*, that they, too, did not receive a final

---

[1] R. Doc. 142.
[2] R. Doc. 174.
[3] R. Doc. 182.
[4] 29 U.S.C. § 206.
[5] La. Rev. Stat. §§ 23:361-32

1

paycheck.[6] The four named Plaintiffs moved this Court to bring this action collectively on behalf of former employees of Defendants who worked at a Metrowide Apartment location who were terminated, resigned, or separated from employment at any time since May 5, 2017 and were not paid a final paycheck, or salaried current or former employees of Defendants who worked at a Metrowide Apartments location, who despite being paid salary were required to track time and had time deducted from their paychecks based on the number of hours performed.[7] Following conditional certification, eight additional opt-in plaintiffs joined the collective action. Two have since been dismissed without prejudice.[8]

Defendants now move to decertify this collective action asserting Plaintiffs are not sufficiently similar to justify collective action in that Plaintiffs held different positions, worked at different locations, had different pay structures, and Defendants have different defenses to each of their claims.[9] Plaintiffs contend that they were all subject to a common policy or plan by Defendants which, in the interest of judicial economy and fairness, should be adjudicated together.[10]

## APPLICABLE LAW

The FLSA provides an avenue for employees to sue an employer for FLSA violations through a collective action on behalf of themselves and "other employees similarly situated."[11] The purpose of such a remedy, as prescribed by Congress, is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA

---

[6] R. Doc. 21.
[7] R. Doc. 96.
[8] R. Doc. 157.
[9] R. Doc. 142.
[10] R. Doc. 174.
[11] 29 U.S.C. § 216(b).

by a particular employer."[12] District courts have broad discretion in deciding whether to grant or deny certification and broad authority over notice in order to prevent the misuse of such actions.[13]

Prior to 2021, the generally accepted approach in this Circuit when determining whether to certify a collective action under 28 U.S.C. § 216(b) was outlined in *Lusardi v. Xerox Corp.*[14] The *Lusardi* approach consisted of a two-stage certification process beginning with a "notice" stage and a second "decertification" stage.[15] The first stage involves a Court's determination of whether to "conditionally" certify a collective action and authorize notice to potential class members.[16] The second stage reanalyzes the conditional certification and allows for decertification if there is a showing that the case is not appropriate for consideration as a collective action.[17] Such decertification is warranted if the collective plaintiffs are not "similarly situated."[18]

In 2021, the Fifth Circuit partially rejected the *Lusardi* approach in *Swales v. KLLM Transport Services, L.L.C.*[19] In *Swales*, the Court focused on issues with the first stage of *Lusardi*,[20] which has passed in this case. Since then, the Fifth Circuit has explained: "While *Swales* rejected *Lusardi*'s two-step method of 'conditional certification' and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi*'s second step."[21]

---

[12] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008) (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)); *see also Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (%th Cir, 2023).
[13] *See Hoffman-LaRoche Inc. v. Spearling*, 493 U.S. 165, 170 (1989).
[14] *Lusardi v. Xerox Corp.*, 116 F.R.D. 351 (D.N.J. 1987). *See Xavier v. Belfor USA Grp.*, 585 F. Supp. 2d 873, 876 (E.D. La. 2008) (describing the *Lusardi* approach as the "preferred method").
[15] *Id*.
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021).
[20] *Id*. at 439.
[21] *Loy, supra*, at 336-37 (citing *Badon v. Berry's Reliable Res., LLC*, No. 2:19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021)).

The Court further explained that "use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply: 'The bottom line is that the district court has broad, litigation-management discretion,' 'cabined by the FLSA's 'similarly situated' requirement.'"[22] The burden of proving that the plaintiffs and opt-ins are similarly situated remains with the plaintiff.[23]

The question before the Court at this stage is whether the Plaintiffs and Opt-Ins are sufficiently "similarly situated" as to proceed with a collective action. To determine if the plaintiffs and opt-ins are similarly situated in a collective action, courts may consider three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[24] "The more dissimilar the plaintiffs' job experiences are from one another and the more individual an employers' defenses are, the less appropriate the matter is for collective treatment."[25]

## ANALYSIS

According to Defendant, there are differences in the factual and employment settings of each of the Plaintiffs. Seven plaintiffs are allegedly salaried employees while three are hourly workers. All performed work for various entities (including entities not party to this suit) or Mr. Bruno personally. Three plaintiffs were property managers at different properties, one was a leasing agent, one a leasing consultant, one an accounting manager, one an executive assistant, two janitorial/maintenance workers, and one part-time personal babysitter. The claims vary from

---

[22] *Loy*, at 337 (quoting *Swales*, 985 F.3d at 443).
[23] *Swales, supra,* at 443 n.65.
[24] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *See also Moody v. Associated Wholesale Grocers, Inc.*, No. 17-10290, 2019 WL 6036707, at *2 (E.D. La. Nov. 14, 2019).
[25] *Moody v. Associated Wholesale Grocers, Inc.*, No. 17-10290, 2019 WL 6036707, at *2 (E.D. La. Nov. 14, 2019).

4

plaintiff to plaintiff, with some alleging they were not paid overtime while others allege they were not paid due bonuses or commissions. Some allege they did not receive their final paychecks while others did receive the paychecks but after the 15-day deadline set forth in the LWPA. Defendants assert that, due to the individualized nature of each plaintiff's claims, individualized defenses are asserted and warranted. For example, Defendants assert different statutory exemptions for each of the purported salaried workers and defenses for hourly workers who allege they were docked wages improperly. Defendants maintain that certain plaintiffs cannot make a *prima facie* showing of their FLSA claims.

Plaintiffs counter that in the interest of fairness and procedural concerns, this matter should move forward as a collective action. First, they argue that maintaining a collective action would negate the need for several individual trials, resulting in more delay to Plaintiffs after "several Covid-related delays."[26] Plaintiffs next argue that the questions of FLSA applicability, salary status, good faith and willfulness of the Defendants, and joint employer and individual personal liability are common to all claims and necessitate resolution via collective action.

Defendants maintain that using possible FLSA applicability as the basis of collective action would require that all FLSA claims by employees of a common employer in the future to move forward as collective actions. Plaintiffs do not, and cannot, cite to authority <u>requiring</u> collective action for FLSA applicability of employees by a common employer. However, as the Fifth Circuit emphasized, it is within the court's "broad, litigation-management discretion" to permit collective action.

---

[26] R. Doc. 174.

Defendants further argue that the salary status of each plaintiff is individualized, as the individual statuses are disparate with some plaintiffs being salaried while others were paid hourly. While Plaintiffs disagree with this assertion, their disagreements over each Plaintiff's salary status are necessarily individualized. The parties are diametrically opposed with regard to whether the purportedly salaried employees were in fact salaried, as Plaintiffs contend both hourly and salaried employees had to fill out timesheets and wages were subject to deduction based on those timesheets.[27]

Defendants' good faith and willfulness also requires individualized proof for each Plaintiff. Plaintiffs have not yet made a showing of a common policy or plan by Defendants to act in bad faith. Nor have Plaintiffs established joint employment as to each plaintiff. And, given the varied employment settings of the individual Plaintiffs, whether each defendant satisfies the requisite economic reality test with respect to each plaintiff must be proven on an individual basis.[28] Plaintiffs also seek to hold the Defendants jointly liable as an "enterprise" under the common control of Bruno himself, as according to Plaintiffs each of the entities are shell companies under Bruno, Inc., owned and operated by Bruno. These are all issues best left to a jury, as the Court has previously denied motions for summary judgment, and they are not necessarily amenable to collective action given the disparate employment situations and individualized defenses. While the Court agrees that some common issues may overlap among the plaintiffs and their claims, there are other methods of managing this litigation to the benefit of judicial efficency.

## **CONCLUSION**

---

[27] *See MSJ Memo.*
[28] *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).

In sum, after reviewing the briefs, the record, and the relevant law, the Court finds that a single trial of all plaintiffs' and their claims would result in confusion both for the jury and management of the trial itself. The benefits of a collective action under the FLSA would not be present here.[29] Accordingly, the Court will grant the *Motion to Decertify the Collective Action*.

Accordingly, **IT IS ORDERED** that the *Motion to Decertify the Collective Action* is GRANTED.[30]

New Orleans, Louisiana, this 2nd day of August 2023.

_____
Hon. Greg Gerard Guidry
United States District Judge

---

[29] As the Fifth Circuit explained in *Loy*: "A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." 71 F.4th at 336 (citations omitted).

[30] R. Doc. 142.