UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRITTANY MOORE, ET AL.                          CIVIL ACTION

VERSUS                                                    NO: 20-217

MW SERVICING, LLC, ET AL.                       SECTION: T(5)

## ORDER

Before the Court are three cross-motions for partial summary judgment: (1) Defendants'

motion seeking dismissal of the FLSA claims of Dmitry Feller, Chris Willridge, and Brittany

Moore;[1] (2) Defendants' motion seeking dismissal of the LWPA claims of Dmitry Feller and Jada

Eugene;[2] and (3) Plaintiffs' motion for a finding of liability on FLSA and LWPA claims.[3]

## FACTUAL BACKGROUND

This matter arises from allegations of unpaid wages in violation of the Fair Labor Standards

Act ("FLSA")[4] and the Louisiana Wage Payment Act ("LWPA").[5] In November 2019, Plaintiff

Moore began working as an Assistant Property Manager of the Oakmont Apartments, a multi-unit

complex owned and operated by Defendants. Plaintiff Moore resigned a month later citing

understaffing and unsafe conditions at the complex. Plaintiff Moore claims she never received her

final paycheck despite repeated procurement efforts. This suit followed, with three additional

plaintiffs (Christopher Willridge, Jada Eugene, and Dmitry Feller) joining shortly thereafter

---

[1] R. Doc. 144. This Motion was also filed regarding claims of Opt-In Plaintiff, Wanya Major. Major has since been dismissed without prejudice from this suit.
[2] R. Doc. 145.
[3] R. Doc. 162.
[4] 29 U.S.C. § 206.
[5] La. Rev. Stat. §§ 23:361-32.

alleging, *inter alia*, that they, too, did not receive a final paycheck.[6] The four named plaintiffs moved this Court to bring this action collectively on behalf of certain former employees of Defendants.[7] Following conditional certification, eight additional opt-in plaintiffs joined the collective action. The matter was decertified this date, which leaves only the four named plaintiffs.[8]

## APPLICABLE LAW

### I.   Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9] The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law."[10] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party.[11] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[12] However, "unsupported

---

[6] R. Doc. 21.
[7] R. Doc. 96.
[8] The Motion to Decertify Collective Action, R. Doc. 142, was granted this date.
[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*citing* Fed. R. Civ. P. 56(c)).
[10] *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (*quoting Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)).
[11] *Celotex,* 477 U.S. at 323.
[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[13]

## II.    FLSA and Exemptions

The FLSA requires employers to pay overtime compensation to its non-exempt employees who work more than forty hours per week.[14] The legal standard for overtime payment must be met by the plaintiff with a showing that an employer-employee relationship exists, the employee engaged in activities within FLSA coverage, the employer violated the overtime wage requirements, and the amount of compensation due.[15] An employer under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee."[16] Establishment of employer status is done via the "economic reality test" wherein the court must evaluate: "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[17] However, a party does not need to establish each element in every case.[18] Those who have operating control over employees within the companies may be individually liable for FLSA violations committed by the companies.[19]

Employees bear the burden of establishing entitlement to FLSA protections.[20] To do so, the employee must show that either: (1) they personally engaged in commerce or the production

---

[13] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[14] *Faludi v. U.S. Shale Solutions, L.L.C.*, 950 F.3d 269, 272 (5th Cir. 2020) (*citing Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).
[15] *Harvell v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (internal citations omitted).
[16] 29 U.S.C. § 203(d).
[17] *Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012) (internal citations omitted).
[18] *Id*. at 357.
[19] *Martin v. Spring Break '83 Prods. LLC*, 688 F.3d 247, 251 (5th Cir. 2012).
[20] *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam).

of goods for commerce, or (2) they worked for an enterprise engaged in such activity.[21] Enterprise coverage applies to employers that have employees engaged in commerce or have employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person.[22] The employer must also have an annual gross volume of business of at least $500,000.00.[23] A covered enterprise is defined as including "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments."[24] The fact-finder must determine if the businesses alleged to be an enterprise (1) engage in related activities, (2) are subject to common control of unified operation, and (3) are linked by a common business purpose.[25] Several nominally separate businesses are considered a single employer should they comprise an integrated enterprise.[26]

The FLSA provides several categories of exempt employees excluded from overtime requirements.[27] An overtime exemption is an affirmative defense; thus, the employer bears the burden of proving "facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable."[28] Exempt employees include those "working in a bona fide executive, administrative or professional capacity."[29] Whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law.[30] The employer bears the burden

---

[21] *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 2007).
[22] 29 U.S.C. § 203(s)(1)(A).
[23] *Id*.
[24] 29 U.S.C. § 203(r).
[25] *Id*.; *Brennan v. Arnheim & Nelly Inc.*, 410 U.S. 512 (1973).
[26] *Alcoa, Inc. v. NLRB*, 849 F.3d 250, 255 (5th Cir. 2017).
[27] *See* 209 U.S.C. §§ 207, 213.
[28] *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 281 (5th Cir. 2013).
[29] *Faludi*, 950 F.3d at 273 (*citing Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000), 29 U.S.C. § 213(a)(1)).
[30] *Id*.

of proving an exemption applies by a preponderance of the evidence.[31] The FLSA exemptions must be given a "fair reading" as opposed to narrowly construing them against the employer.[32]

The FLSA defines the term "employed in a bona fide professional capacity" as any employee: "(1) compensated on a salary basis at a rate of at least $684 per week [$35,568 per year]" and "whose primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."[33] Certified public accountants and accountants who perform similar job duties to certified public accountants meet the "duty" requirements for the professional exemption.[34]

To qualify as an exempt employee "employed in a bona fide executive capacity" the employee must: (1) be compensated on a salaried basis rate of at least $684 per week [$35,568 per year]; (2) have the primary duty of management of the enterprise in which they are employed or of a customarily recognized department or subdivision thereof; (3) customarily and regularly direct the work of two or more other employees; and (4) have the authority to hire or fire other employees, or be one whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[35]

The exemption for those "employed in a bona fide administrative capacity" applies to employees who: (1) are compensated on a salaried basis rate of at least $684 per week [$35,568

---

[31] *Id*. (*citing Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013)).

[32] *Id*. (*citing Encino Motorcars, LLC v. Navarro*, --- U.S. ---, 138 S. Ct. 1134, 1142, 200 L.Ed. 433 (2018); *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018)).

[33] 29 C.F.R. § 541.300. (The figures quoted are from the most recent amendment in January 2020. For those employees whose employment ended prior to this amendment, the statute in place at the time of their employment termination noted wages of $455 per week.)

[34] 29 C.F.R. § 541.301.

[35] 29 C.F.R. § 541.100. (The figures quoted are from the most recent amendment in January 2020. For those employees whose employment ended prior to this amendment, the statute in place at the time of their employment termination noted wages of $455 per week.)

per year]; (2) have the primary duty of performing office of non-manual work directly related to the management or general business operations of the employer; and (3) such primary duty includes the exercise of discretion and independent judgment with respect to matters of significant.[36] A plaintiff whose work involved "work that was predominantly intellectual in nature and involved little, if any, manual labor or mechanical work" qualifies under the bona fide administrative capacity exemption.[37] The FLSA provides a non-exhaustive list of factors to consider in determining if the employee exercises the requisite discretion and independent judgment, including:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employee in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.[38]

The issue of whether the work duty of monetary collections qualifies as an exempt work duty is not clear in Louisiana. Plaintiffs cite to caselaw from Texas, Florida, California, and the 9th Circuit which reflect other courts have found that collection of overdue accounts are not exempt and not administrative work.[39] Regulations list activities that qualify as administratively exempt:

---

[36] 29 C.F.R. § 541.200; (The figures quoted are from the most recent amendment in January 2020. For those employees whose employment ended prior to this amendment, the statute in place at the time of their employment termination noted wages of $455 per week.)

[37] *See, e.g., Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 266-67 (5th Cir. 2000).

[38] 29 C.F.R. § 541.202(b).

[39] *Friou v. L.E. Coppersmith Inc.*, 1998 U.S. Dist. LEXIS 15062, at *14 (S.D. Tex. July 21, 1998); *Soliz v. Assocs. In Med., P.A.*, 2008 U.S. Dist. LEXIS 60589, at *30 (S.D. Tex. Aug. 17, 2007); *Lopez v. Elfaki*, 2017 U.S. Dist. LEXIS

"[T]ax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network; internet and database administration; legal and regulatory compliance; and similar activities."[40]

Employees not paid according to their salary basis are not subject to the aforementioned exemptions.[41] The question to be resolved is whether an employees' wages are truly salaried in that the wages are guaranteed and not subject to deduction for not working enough hours.[42] A salary, per the FLSA, is a "predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[43] If deductions are actually made from an employee's salary for those reasons, the salary basis test is not met and the exemption is lost.[44]

### III.    LWPA Standard

The Louisiana Wage Payment Act (LWPA) serves two purposes. First, it requires employers to pay employees earned wages promptly upon the employee's discharge or resignation.[45] Second, it serves "to protect discharged Louisiana employees from unfair and dilatory wage practices by employers."[46] The LWPA imposes punishment on employers, who fail

---

216434, at *21 (M.D. Fla. Nov. 14, 2017); *Olivia v. Infinite Energy, Inc.*, 2012 U.S. Dist. LEXIS 190519, at *23 (N.D. Fla. Oct. 12, 2012); *Haber v. Americana Corp.*, 378 F.2d 854 (9th Cir. 1967); *Scarmato v. N. California Thrift Co.*, 184 F. Supp. 420, 422 (N.D. Cal. 1960).

[40] 29 C.F.R. § 541.201(b).

[41] *See Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289 (5th Cir. 2021) (*en banc*).

[42] *Id.* at 291.

[43] 29 C.F.R. § 541.602.

[44] 29 C.F.R. § 641.603. ("An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis.  An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.")

[45] La. R.S. § 23:631, also called the Last Paycheck Law; *see also Newton v. St. Tammany Fire District No. 12*, 20-0797 (La. App. 1 Cir. 2/19/21), 318 So.3d 206, 211.

[46] La. R.S. § 23:631(A)(1)(a)-(b); *see also Becht v. Morgan Building & Spas, Inc.*, 843 So.2d 1109, 1111 (La. 2003).

to pay former employees promptly, of either ninety days wages at the employee's daily rate of pay or else for full wages from the time they are demanded from the employee until the employer pays or tenders the amount of unpaid wages, whichever is lesser.[47] In addition to these penalty wages, the court shall award "[r]easonable attorney fees" to employees who file "well-founded suit for any unpaid wages whatsoever" so long as the employee waits at least three days after making the initial demand from discharge or resignation and filing suit.[48] With those attorney fees, plaintiffs with successful LWPA claims are entitled to judicial interest and costs.[49]

To recover unpaid wages under the LWPA, an employee must prove that "i) [the defendant] was her employer, ii) that the employee/employer relationship ceased to exist, iii) that at the time that the employee/employer relationship ended she was owed wages, and iv) that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days."[50] Demand is not required to assert a claim for unpaid wages under the LWPA.[51] Demand is, however, required in order to recover penalty wages. To recover penalty wages and attorney's fees, an LWPA claimant must show "(1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand."[52]

Payment of wages should be made in the way the employee is customarily paid.[53] In the event payment is made via mail, the payment is deemed made upon mailing.[54] Timeliness of mailing can be shown by official United States postmark or other official documentation from the

---

[47] La. R.S. § 23:632(A).
[48] La. R.S. § 23:632(C); *see also Schuyten v. Superior Sys.*, 2005-2358 (La. App. 1st Cir. 12/28/06); 952 So.2d 98, 107.
[49] *Id*.
[50] *Dillon v. Toys R Us-Delaware Corp.*, No. 2016-0983, 2017 WL 2351490, at *2 (La. Ct. App. 4th Cir. May 31, 2017).
[51] LA. R.S. § 23:631(A)(1)(a)-(b); *Schuyten v. Superior Sys., Inc.*, 952 So.2d 98 (La. Ct. App. 1st Cir. 2007) ("The duty to pay the actual wages due is not dependent on the employee making a demand for payment.").
[52] *Becht*, 843 So.2d at 1112.
[53] La. R.S. § 23:631.
[54] *Id*.

United States Postal Service.[55] Included in wages under the LWPA are accrued but unused vacation time or paid time off.[56] Bonuses must be classified as either wages or not wages under the LWPA. The question of whether bonuses are included as wages under the LWPA is a mixed question of law and fact.[57] In this classification, "[b]onuses paid as part of an incentive plan to encourage longevity or production may be called bonuses' but are more in the nature of commissions and are considered wages."[58] Failure to pay an earned bonus on resignation also leads to statutory penalties.[59] Commissions are also considered wages in at least three Louisiana appellate circuits.[60]

The LWPA provides three exclusive exceptions excusing payment of final paychecks: "[1] where the employees willfully or negligently damage goods or works, [2] or in cases where employees willfully or negligently damage or break the property or the employer, [3] or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds, but in such cases the fines shall not exceed the actual damage done."[61] An employer's claim of setoff, or compensation, is an equitable defense to a penalty wage claim.[62] Whether a set-off was properly taken is an issue of fact.[63] Courts may not simply assume the monetary value of a purported

---

[55] La. R.S. § 23:631(A)(2).

[56] *Beard v. Summit Inst. for Pulmonary Med. And Rehab., Inc.*, 97-1784, p. 3 (La. 3/4/98); 707 So.2d 122, 1236.

[57] *Batiansila v. Advanced Cardiovascular Systems, Inc.*, 952 F.2d 893 (5th Cir. 1992).

[58] *See Cochran v. Am. Advantage Mort. Co.*, 93-1480 (La. App. 1 Cir. 6/24/94); 639 So.2d 1235); Rick J. Norman, Louisiana Practice Series, Employment Law § 4:30 (2020 Ed.).

[59] *Kirmer v. Goodyear Tire & Rubber Co.*, 538 F. App'x 520, 525 (5th Cir. 2013) (per curiam).

[60] *See Jeansonne v. Schmoke*, 2009-1467 (La. App. 4 Cir. 05/19/10); 40 So.3d 347, 358; *Lorentz v. Coblentz*, 600 So.2d 1376, 1378 (La. App. 1 Cir. 1992); *Potvin v. Wright's Sound Gallery, Inc.*, 568 So.2d 623 (La. App. 2 Cir. 1990); *Hess v. Pembo*, 422 So.2d 503 (La. App. 4 Cir. 1982).

[61] La. R.S. § 23:635.

[62] *Richard v. Vidrine Automotive Servs., Inc.*, 98-1020 (La. App. 1 Cir. 4/1/99); 729 Fo.2d 1174, 1178; *Blanton v. Malkem Int'l Corp.*, 628 So.2d 178, 182-83 (La. App. 2 Cir. 1993).

[63] *Henderson v. Kentwood Spring Water, Inc.*, 583 So.2d 1227, 1231 (La. App. 1 Cir. 1991).

offset.[64] The burden is on the defendants to prove entitlement to an affirmative defense "beyond peradventure."[65]

<u>ANALYSIS</u>

Both parties have moved for partial summary judgment. In general, Plaintiffs seek FLSA liability on summary judgment. Plaintiffs allege their salaried wages were subject to deduction. It is not disputed that all employees, including salaried employees, were required to track their time and submit timesheets showing daily time in and time out. Plaintiffs allege Bruno has a checklist including a requirement to deduct wages from all employees for quality and time issues.[66] Such checklists were not produced in discovery by defendants, who claim they were thrown away or destroyed in the regular course of business. Instead, one such blank checklist was retained by a Plaintiff, Dmitry Feller.

Defendants counter, claiming Plaintiffs have not proven enterprise coverage under the FLSA and alternatively have not put forth any specific proof that each employee was employed by all of the named defendants. Defendants argue Plaintiffs have failed to show each defendant meets the economic reality test with respect to each defendant exercising control over the individual plaintiffs, stating that while Bruno was the sole owner of each entity and had potential power to hire/fire employees, supervise, and determine pay rates, at most that demonstrates a connection between Bruno and the conditions of the Plaintiffs' employment but not that any other of the three entities had relationships with the employees. They argue there is no evidence that Bruno, Inc. had any employment relationship with any Plaintiff. With regard to enterprise coverage, without the discovery responses regarding annual gross volume of business over

---

[64] *U.S. v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998).
[65] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).
[66] R. Doc. 162-9.

$500,000, Defendants assert there has been no proof that the entities qualify under this standard. Defendants also assert that at least a few plaintiffs have not claimed nor are owed overtime under the FLSA, precluding liability on the part of those plaintiffs.

With regard to the LWPA, Plaintiffs assert that two plaintiffs were not paid their final wages until months after demanding same, and outside the statutory timeframe. Plaintiffs also assert that other plaintiffs received final paychecks which were improperly deducted. Finally, plaintiffs argue that certain plaintiffs did not receive compensation for paid time off accrued, bonuses, and/or commissions due. Defendants respond, claiming that plaintiffs did not show all four defendants were the employers of all plaintiff-employees. Defendants also claim that the two employees claiming to not receive a final paycheck at all were in fact timely given checks that they did not cash. For the plaintiffs who received deducted final paychecks, defendants assert that issues remain regarding entitlement to set-off from plaintiff's wages.

The Court finds that genuine issues of material fact preclude granting any of the subject motions. Remaining to be proven is enterprise liability for all Bruno entities named in this suit. The FLSA claims of each Plaintiff regard a factual determination of whether salaries were indeed deducted based on the checklist completed by each of the Metrowide/MW Servicing employees. That determination of fact will necessarily lead to a finding of whether each of the employees was an exempt, salaried employee per the standards listed above. Any purported owed overtime must be proven to the fact-finder, and none of the motions presents evidence in that regard. Similarly, the motions regarding the LWPA claims of the parties cannot be granted at this time. Any additional claims for commissions, overtime, or vacation time are also factual determinations that are not clear based on the motions before this Court. Additionally, the propriety of set-offs is a question of fact and must be proven as an affirmative defense by the Defendants in this matter at

trial. There also remain genuine issues of material fact regarding whether or not final paychecks were in fact mailed or issued to certain Plaintiffs, which requires determination by a fact-finder.

## <u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** that the *Motion for Partial Summary Judgment* file by Plaintiffs is **DENIED.**[67]

**IT IS FURTHER ORDERED** that the *Motions for Partial Summary Judgment* filed by Defendants are **DENIED.**[68]

New Orleans, Louisiana, this 2nd day of August 2023.

_____
Hon. Greg Gerard Guidry
United States District Judge

---

[67] R. Doc. 162.
[68] R. Docs. 144 and 145.